UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CHERYL M. AMY,                    )
                                  )  No. CV-11-319-FVS
          Plaintiff,              )
                                  )  ORDER GRANTING DEFENDANT'S
                                  )  MOTION FOR SUMMARY JUDGMENT
          v.                      )
                                  )
                                  )
MICHAEL J. ASTRUE, Commissioner   )
of Social Security,               )
                                  )
          Defendant.              )
                                  )

**BEFORE THE COURT** are cross-motions for summary judgment.
(ECF No. 13, 18).  Attorney Lora Lee Stover represents plaintiff;
Special Assistant United States Attorney Daniel E. Burrows
represents the Commissioner of Social Security (defendant).
After reviewing the administrative record and the briefs filed by
the parties, the court **grants** defendant's Motion for Summary
Judgment.

### JURISDICTION

Plaintiff applied for supplemental security income (SSI) and
disability insurance benefits (DIB) on August 31, 2009, alleging
disability as of June 16, 2003 (Tr. 196).  The applications were
denied initially and on reconsideration.

Administrative Law Judge (ALJ) Caroline Siderius held a
hearing on November 4, 2010 (Tr. 40-70), and issued an unfavorable
decision on December 22, 2010 (Tr. 16-27).  The Appeals Council
denied review on July 25, 2011 (Tr. 1-6).  The ALJ's December 2010
decision became the final decision of the Commissioner, which is
appealable to the district court pursuant to 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

1  Plaintiff filed this action for judicial review on August 29, 2011
2  (ECF No. 1, 4).

3  **STATEMENT OF FACTS**

4      The facts have been presented in the administrative hearing
5  transcript, the ALJ's decision, and the briefs of the parties.
6  They are only briefly summarized here.

7      Plaintiff was born on December 29, 1960 (Tr. 196) and was 42
8  years old on the alleged onset date.  She reported she obtained a
9  two-year AS degree in early childhood education in 1995 (Tr. 55)
10 and last worked in 2003 as a teacher's aide (Tr. 47).  Plaintiff
11 indicated she ended that employment because she had trouble
12 staying focused due to insomnia (Tr. 47-48).  At the time of the
13 administrative hearing, plaintiff lived by herself in a trailer
14 (Tr. 49-50).  Her sole source of income at the time was public
15 assistance (Tr. 58).

16     With respect to physical problems, plaintiff testified that
17 she believes she has fibromyalgia, chronic pain in her back and
18 neck and "kind of all over", and what she believes is nerve issues
19 causing pain down her leg and with her wrist or hand (Tr. 50-51,
20 64).  With regard to psychological issues, plaintiff stated she is
21 very forgetful, unorganized and tends to have a lot of anxiety
22 (Tr. 54-55).  She indicated she also has depression (Tr. 56).

23     Plaintiff testified she sometimes sleeps until one in the
24 afternoon (Tr. 60) and spends her days watching television,
25 eating, cooking and doing laundry (Tr. 62).  She stated she has
26 not received complaints from family members regarding the
27 cleanliness of her home, and she does not look for excuses to keep
28 people from visiting her home (Tr. 62).

1    Plaintiff testified she served 30 days in jail after being
2  convicted for possessing cocaine in 2005 or 2006 (Tr. 48, 57-58).
3  Examining physician Dr. Quackenbush also noted in a December 2006
4  examination that Plaintiff had her driver's license suspended at
5  the time for refusing to submit to a blood test when she was
6  believed to be driving under the influence of alcohol (Tr. 250).
7  Plaintiff also reported to Ms. Jamieson-Turner in an October 2005
8  examination that she had been arrested for a DUI (Tr. 496).
9  However, at the administrative hearing, plaintiff indicated she
10  did not use illegal drugs and did not have problems with alcohol
11  (Tr. 48-49, 59).

12                    **SEQUENTIAL EVALUATION PROCESS**

13    The Social Security Act (the Act) defines disability as the
14  "inability to engage in any substantial gainful activity by reason
15  of any medically determinable physical or mental impairment which
16  can be expected to result in death or which has lasted or can be
17  expected to last for a continuous period of not less than twelve
18  months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also
19  provides that a plaintiff shall be determined to be under a
20  disability only if any impairments are of such severity that a
21  plaintiff is not only unable to do previous work but cannot,
22  considering plaintiff's age, education and work experiences,
23  engage in any other substantial gainful work which exists in the
24  national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
25  Thus, the definition of disability consists of both medical and
26  vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156
27  (9th Cir. 2001).
28  ///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1    The Commissioner has established a five-step sequential
2  evaluation process for determining whether a person is disabled.
3  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person
4  is engaged in substantial gainful activities.  If so, benefits are
5  denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If
6  not, the decision maker proceeds to step two, which determines
7  whether plaintiff has a medically severe impairment or combination
8  of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii),
9  416.920(a)(4)(ii).
10    If plaintiff does not have a severe impairment or combination
11  of impairments, the disability claim is denied.  If the impairment
12  is severe, the evaluation proceeds to the third step, which
13  compares plaintiff's impairment with a number of listed
14  impairments acknowledged by the Commissioner to be so severe as to
15  preclude substantial gainful activity.  20 C.F.R. §§
16  404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P
17  App. 1.  If the impairment meets or equals one of the listed
18  impairments, plaintiff is conclusively presumed to be disabled.
19  If the impairment is not one conclusively presumed to be
20  disabling, the evaluation proceeds to the fourth step, which
21  determines whether the impairment prevents plaintiff from
22  performing work which was performed in the past.  If a plaintiff
23  is able to perform previous work, that plaintiff is deemed not
24  disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At
25  this step, plaintiff's residual functional capacity (RFC) is
26  considered.  If plaintiff cannot perform past relevant work, the
27  fifth and final step in the process determines whether plaintiff
28  is able to perform other work in the national economy in view of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1  plaintiff's residual functional capacity, age, education and past
2  work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v);
3  *Bowen v. Yuckert*, 482 U.S. 137 (1987).

4      The initial burden of proof rests upon plaintiff to establish
5  a *prima facie* case of entitlement to disability benefits.
6  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.*
7  *Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is
8  met once plaintiff establishes that a physical or mental
9  impairment prevents the performance of previous work.  The burden
10 then shifts, at step five, to the Commissioner to show that (1)
11 plaintiff can perform other substantial gainful activity and (2) a
12 "significant number of jobs exist in the national economy" which
13 plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th
14 Cir. 1984).

15                    **STANDARD OF REVIEW**

16     Congress has provided a limited scope of judicial review of a
17 Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold
18 the Commissioner's decision, made through an ALJ, when the
19 determination is not based on legal error and is supported by
20 substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995
21 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.
22 1999).  "The [Commissioner's] determination that a plaintiff is
23 not disabled will be upheld if the findings of fact are supported
24 by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572
25 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence
26 is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d
27 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.
28 *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

At step one, the ALJ found plaintiff has not engaged in substantial gainful activity since June 16, 2003, the alleged

onset date (Tr. 18).  At step two, she found plaintiff had severe impairments of "degenerative disc disease; osteopenia of the left hip; depression; anxiety disorder, NOS; undifferentiated somatoform disorder" (Tr. 18).  At step three, the ALJ found plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Tr. 19).  The ALJ assessed plaintiff's RFC and determined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; could stand and/or walk for a total of about 6 hours in an 8-hour workday; could sit for a total of about 6 hours in an 8-hour workday; would need to be able to change positions at least once per hour; should never climb ladders, ropes or scaffolds; and is capable of performing 1 to 3 step tasks with occasional public contact and occasional contact with coworkers (Tr. 21).

At step four, the ALJ found that plaintiff could perform her past relevant work as a teacher's aide I (Tr. 25-26).  In the alternative, the ALJ concluded at step five that, considering plaintiff's age, education, work experience and RFC, and based on vocational expert testimony, there are jobs that exist in significant numbers in the national economy that plaintiff can perform (Tr. 26-27).  The ALJ thus determined that plaintiff has not been under a disability within the meaning of the Social Security Act at any time from June 16, 2003, through the date of her decision (Tr. 27).

**ISSUES**

Plaintiff alleges the ALJ erred because the substantial weight of the record evidence supports a more limited mental RFC

1 determination.  (ECF No. 14 at 12-13).  Plaintiff specifically

2 argues that the ALJ failed to properly evaluate the medical

3 opinions of her providers and consultative examiners.  *Id*.

4 Plaintiff also contends the ALJ erred by finding that she lacks

5 credibility.  (ECF No. 14 at 13-15).

**DISCUSSION**

**I.  Plaintiff's Credibility**

8     Plaintiff argues that the ALJ erred by failing to properly

9 consider plaintiff's testimony regarding her limitations.  (ECF

10 No. 14 at 14-15).  Plaintiff asserts the ALJ should have found,

11 based on plaintiff's testimony, that she has limitations in her

12 abilities to work with supervisors, handle stress, maintain

13 appropriate behavior and be present on a regular basis.  *Id*.

14 Defendant contends that the ALJ's conclusion that plaintiff was

15 not entirely credible had substantial support in the record and

16 should be upheld.  (ECF No. 19 at 14-16).

17     It is the province of the ALJ to make credibility

18 determinations.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

19 1995).  However, the ALJ's findings must be supported by specific

20 cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.

21 1990).  Once the claimant produces medical evidence of an

22 underlying medical impairment, the ALJ may not discredit testimony

23 as to the severity of an impairment because it is unsupported by

24 medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

25 1998).  Absent affirmative evidence of malingering, the ALJ's

26 reasons for rejecting the claimant's testimony must be "clear and

27 convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

28 "General findings are insufficient: rather the ALJ must identify

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment (Tr. 22). As noted above, the ALJ found plaintiff retained the RFC to perform a limited range of light exertion level work with the non-exertional limitations of performing 1 to 3 step tasks with only occasional public contact and only occasional contact with coworkers (Tr. 21).

The undersigned agrees with the ALJ that the medical evidence of record does not reflect the level of limitation plaintiff has alleged in this case (Tr. 22). The ALJ points out that physical examinations have been normal overall, and plaintiff's treating nurse practitioner noted there were no real objective findings to support plaintiff's physical complaints (Tr. 22, 255, 304). The ALJ further indicates that plaintiff's mental status exams have been normal overall (Tr. 22). Examinations have shown plaintiff to be pleasant, cooperative, well groomed, with fair eye contact, no indication of a thought disorder, and fair insight and judgment (Tr. 22, 250, 484, 535). Testing performed in December 2006 revealed average to superior auditory and visual memory abilities (Tr. 22, 251). One medical professional noted in October 2005 that although plaintiff's MMPI results were suggestive of some difficulties, she presented as an attractively dressed and well

groomed woman who seemed to have a busy social life (Tr. 22, 498). Plaintiff also reported at that time that she had no problems with her relationships with co-workers and supervisors (Tr. 495).

Plaintiff's testimony at the administrative hearing also contradicts the level of limitation plaintiff alleges. Despite claims throughout the record that she has problems with sleep, plaintiff did not testify that she has difficulty with sleep, instead indicating that she sometimes sleeps until one in the afternoon (Tr. 60). She also testified she spends her days watching television, eating, cooking and doing laundry, and, with respect to her social life, she has not received complaints from family members regarding the cleanliness of her home and she does not look for excuses to keep people from visiting her home (Tr. 62).

It also appears that plaintiff has been noncompliant with mental health treatment. Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). As noted by the ALJ, treatment notes from 2007 reflect a lack of follow-up on mental health treatment suggestion and last minute cancellations for behavioral health appointments (Tr. 23, 257). Notes from 2010 reflect other cancellations and missed appointments (Tr. 569), and a counseling discharge summary from August 2010 indicates that plaintiff had not been seen since April 2010 and did not respond to messages regarding rescheduling appointments (Tr. 23, 466).

///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

Plaintiff's daily activities are also inconsistent with her allegations of disabling limitations. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (it is well-established that the nature of daily activities may be considered when evaluating credibility).  As indicated by the ALJ, plaintiff has described daily activities that are relatively intact, varied and sustained. She reports she cares for her granddaughter quite a bit; helps her granddaughter eat, dress, and play; has no problems with personal care; prepares simple meals; does laundry; performs light cleaning; washes dishes; drives; does grocery shopping weekly; plays Solitaire and Backgammon; and plays cards or dice games with others on weekends (Tr. 23).  In October 2005, plaintiff also indicated that she and a friend were planning to open an espresso stand (Tr. 23, 496).  This level of activity is inconsistent with plaintiff's claim of disabling conditions.

After reviewing the record, the undersigned finds that the reasons provided by the ALJ for discounting plaintiff's subjective complaints are clear, convincing, and fully supported by the record.  Accordingly, the ALJ did not err by concluding that plaintiff's subjective complaints regarding the extent of her functional limitations were not fully credible in this case.

**II.  Mental Limitations**

Plaintiff argues that her mental condition poses greater limitations than as assessed by the ALJ in this case.  (ECF No. 14 at 12-13).  Plaintiff specifically complains that the ALJ failed to provide convincing rationale for rejecting the opinions of Drs. Dalley, Quackenbush, Mulvihill and Rinaldi.  *Id*.  Defendant responds that the ALJ gave specific and legitimate reasons for

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

1  discounting the Quackenbush and Wilcox-Sjostrom-Dalley opinions,
2  and these reasons were supported by substantial evidence in the
3  record.  (ECF No. 19 at 9-14).

4      In a disability proceeding, the courts distinguish among the
5  opinions of three types of physicians:  treating physicians,
6  physicians who examine but do not treat the claimant (examining
7  physicians) and those who neither examine nor treat the claimant
8  (nonexamining physicians).  *Lester v. Chater*, 81 F.3d 821, 839
9  (9th Cir. 1996).  The Ninth Circuit has held that "[t]he opinion
10 of a nonexamining physician cannot by itself constitute
11 substantial evidence that justifies the rejection of the opinion
12 of either an examining physician or a treating physician."  *Id*. at
13 830.  Rather, an ALJ's decision to reject the opinion of a
14 treating or examining physician, may be *based in part* on the
15 testimony of a nonexamining medical advisor.  *Andrews v. Shalala*,
16 53 F.3d 1035, 1043 (9th Cir. 1995).  The ALJ must also have other
17 evidence to support the decision such as laboratory test results,
18 contrary reports from examining physicians, and testimony from the
19 claimant that was inconsistent with the physician's opinion.  *Id*.
20 at 1042-1043.  Moreover, an ALJ may reject the testimony of an
21 examining, but nontreating physician, in favor of a nonexamining,
22 nontreating physician only when he gives specific, legitimate
23 reasons for doing so, and those reasons are supported by
24 substantial record evidence.  *Roberts v. Shalala*, 66 F.3d 179, 184
25 (9th Cir. 1995).

26     Peter Rinaldi, M.D., treated plaintiff from November 19,
27 2002, to June 27, 2003 (Tr. 542-546).  Medical records indicate
28 Dr. Rinaldi diagnosed plaintiff with depression, anxiety, sleep

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

deprivation/insomnia and back pain and prescribed medication for depression and anxiety during this time period. *Id*. It was noted on November 19, 2002, that Dr. Rinaldi mentioned counseling, but that plaintiff was unwilling to see a counselor at that time (Tr. 546). On June 27, 2003, Dr. Rinaldi noted that plaintiff was doing well and planned to open an espresso stand (Tr. 543). The physical exam on that date revealed "a pleasant healthy-appearing woman in no distress" (Tr. 543).

Dr. Rinaldi's records are mostly from a period of time prior to the alleged onset date. Those that are from the relevant time period do not support greater limitations than those assessed by the ALJ. In any event, as noted by defendant, the reports only document plaintiff's reported symptoms and indicate the doctor's diagnoses. The records do not discuss plaintiff's functional limitations or the expected duration of any limitations.

On October 24, 2005, plaintiff was examined by Kathy Jamieson-Turner, M.S., under the supervision of Frank Rosekrans, Ph.D. (Tr. 491-498). Plaintiff reported spending her days cleaning, cooking, eating, playing cards with friends, listening to music and watching television (Tr. 496). Plaintiff also stated she had no difficulty performing daily household chores (Tr. 496). Ms. Jamieson-Turner diagnosed personality disorder, NOS, with borderline and dependent features (Tr. 492). She gave plaintiff a global assessment of functioning (GAF) score of 70[1] (Tr. 497) and

---

[1]A GAF of 70-61 is characterized as: "Some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 12 (3d ed. Rev. 1987).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

opined that plaintiff had no cognitive or social impairments (Tr. 493). She indicated that while the results of plaintiff's MMPI were suggestive of her having some difficulties, her presentation was not consistent with having any difficulties (Tr. 498). Ms. Jamieson-Turner stated plaintiff "is an attractive neatly dressed and well groomed woman who seems to have a busy social life. There was no evidence to suggest symptoms of depression severe enough to prevent [plaintiff] from working" (Tr. 498).

The ALJ noted that Ms. Jamieson-Turner's opinion was only partially supported by her clinical findings and thus was not given "great weight" (Tr. 24). Nevertheless, the ALJ appropriately gave Ms. Jamieson-Turner's opinion some weight in this matter (Tr. 24), as it is generally consistent with the weight of the credible evidence of record.

On June 25, 2006, plaintiff was evaluated by Joyce Everhart, Ph.D. (Tr. 271-275). Plaintiff reported she gets up in the morning and then usually watches television until after 3:00 p.m. Plaintiff reported she could spend hours playing on her computer during the day (Tr. 273). Dr. Everhart diagnosed depressive disorder, NOS, mild and gave plaintiff a GAF score of 55/60[2] (Tr. 274). Dr. Everhart indicated plaintiff does not need help to complete her activities of daily living, she is able to cook, clean, do laundry and take care of her personal hygiene, and she presented with good social skills and seemed only mildly depressed (Tr. 274). It was noted that Plaintiff's train of thought was

---

[2]A GAF of 60-51 reflects: Moderate symptoms or moderate difficulty in social, occupational, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

logical and coherent, her attention, concentration and
intellectual ability appeared to be within normal limits, she had
good ability to complete one or two-step tasks of a repetitive
nature, she appeared to have some ability to complete complex
multi-step tasks, and her persistence and pace were good (Tr. 274-
275).

     The ALJ found that Dr. Everhart's opinion was well supported
by clinical findings and was consistent with the medical record as
a whole (Tr. 24).  The undersigned finds that the ALJ properly
gave Dr. Everhart's opinion significant weight (Tr. 24) as it is
consistent with the credible evidence of record.

     On December 5, 2006, plaintiff underwent a psychological
evaluation performed by Robert L. Quackenbush, Ph.D. (Tr. 248-
252).  Plaintiff reported she is able to complete most households
chores.  She cooks, washes dishes, vacuums, performs laundry
tasks, and completes some outdoor work (Tr. 250).  Plaintiff was
fully cooperative throughout the exam and no marked problems were
observed with plaintiff's concentration, persistence or pace (Tr.
250).  Testing revealed a profile of average to superior auditory
and visual memory abilities (Tr. 251).  Dr. Quackenbush diagnosed
depressive disorder, NOS, gave plaintiff a GAF score of 55, and
opined that plaintiff's prognosis was fair to good  (Tr. 251-252).
He noted that depression created problems and that consistent
mental health therapy, in combination with pharmacotherapy, was
indicated (Tr. 252).

     As noted by the ALJ, Dr. Quackenbush's conclusion regarding
plaintiff's cognitive limitations was only partially supported by
his clinical findings and his opinion regarding plaintiff's social

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

and adaptive limitations appeared to have been based largely on plaintiff's self-report[3] (Tr. 25).  The ALJ gave Dr. Quackenbush's opinion regarding plaintiff's social and adaptive limitations little weight as it was inconsistent with plaintiff's relatively intact daily activities.  Dr. Quackenbush's opinion in this regard is also inconsistent with the weight of the record evidence which reflects adequate social functioning.  The undersigned agrees with the ALJ's finding as to Dr. Quackenbush.

On June 7, 2007, plaintiff was examined by Dawn Wilcox, B.A., M.S. Candidate, Brooke Sjostrom, M.S., LMHC, and Mahlon Dalley, Ph.D. (Tr. 262-270).  Plaintiff reported difficulty doing daily household chores due to feeling overwhelmed (Tr. 264).  The medical professionals diagnosed undifferentiated somatoform disorder and major depressive disorder, recurrent moderate, and gave plaintiff a GAF score of 56 (Tr. 265).  They opined that plaintiff's somatic and depressive symptoms were likely to interfere with her ability to tolerate the pressures and expectations of a normal employment position (Tr. 265).  It was noted that plaintiff had marked and moderate limitations with social functioning (Tr. 269), but the medical professionals estimated plaintiff would be impaired to the degree indicated for a maximum of only 6 months[4] (Tr. 270).

///

---

[3]As indicated above, the ALJ appropriately discounted plaintiff's subjective complaints in this case.  *See supra*.

[4]The June 7, 2007 Wilcox-Sjostrom-Dalley opinion would thus not meet the duration requirements of the Act (one year).  42 U.S.C. § 1382c(a)(3)(A).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

On December 17, 2007, Ms. Sjostrom and Dr. Dalley completed
another psychological/psychiatric evaluation (Tr. 308-319).
Plaintiff again reported difficulty completing daily household
chores (Tr. 318).  Plaintiff was diagnosed with undifferentiated
somatoform disorder and major depressive disorder, recurrent,
severe without psychotic features, and was given a GAF score of 51
(Tr. 318).  It was opined that plaintiff had marked and moderate
social limitations (Tr. 310), but that the impairments were
expected to last only 6 to 12 months (Tr. 311).  They indicated
plaintiff's current mood and somatic symptoms were likely to
continue to interfere with her ability to successfully initiate
and maintain regular employment (Tr. 319).

On May 23, 2008, Ms. Sjostrom and Dr. Dalley completed a
third psychological/psychiatric evaluation (Tr. 320-328).  They
diagnosed plaintiff with undifferentiated somatoform disorder and
major depressive disorder, recurrent, moderate, and gave plaintiff
a GAF score of 53 (Tr. 327).  On this occasion, they indicated
that plaintiff's depression and somatic concerns were not likely
to improve substantially within the next 12 months (Tr. 323, 327).

On August 24, 2010, Dr. Dalley completed a fourth evaluation
of Plaintiff (Tr. 527-536).  Plaintiff was diagnosed with major
depressive disorder, recurrent, moderate, and generalized anxiety
disorder and given a GAF score of 56 (Tr. 530).  Dr. Dalley
assessed marked social limitations (Tr. 531) and indicated it was
unlikely that her condition would improve within the next 12
months (Tr. 536).

The ALJ agreed with the findings of the above medical
professionals with respect to plaintiff's cognitive functioning;

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

1  however, the conclusions regarding plaintiff's social limitations

2  were accorded little weight as they appeared to have been based

3  largely on plaintiff's self-report[5] and were inconsistent with

4  plaintiff's relatively intact daily activities (Tr. 25).  As noted

5  by the ALJ, plaintiff's daily activities, which include shopping

6  and playing cards with others, suggest adequate social function

7  (Tr. 20).  The undersigned finds that the ALJ's decision to accord

8  the medical professionals' assessed limitations regarding social

9  factors little weight is fully supported by the record evidence

10 which demonstrates that plaintiff's social functioning is not

11 significantly limited.

12      On July 11, 2007, James Bailey, Ph.D., reviewed the record

13 and concluded that plaintiff had the ability to understand,

14 remember and carry out simple and complex instructions and tasks,

15 could work around others but not with high levels of cooperation,

16 would need mostly positive feedback and could respond to goals set

17 by others (Tr. 279).  Eugene Kester, M.D., affirmed Dr. Bailey's

18 report on September 26, 2007.  On November 30, 2009, Mary A.

19 Gentile, Ph.D., reviewed the record and concluded plaintiff was

20 capable of simple and well-learned complex tasks, her attention,

21 concentration and pace would wane episodically, and she had no

22 significant social or adaptive limitations (Tr. 420-422).  Beth

23 Fitterer, Ph.D., affirmed Dr. Gentile's report on February 26,

24 2010 (Tr. 439).

25 ///

26

27

28      [5]Again, as indicated above, the ALJ appropriately discounted
   plaintiff's subjective complaints in this case.  *See supra*.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

The ALJ found the opinions of the state agency reviewing physicians adequately considered plaintiff's subjective complaints and were consistent with the objective medical evidence of record and the record as a whole (Tr. 23).  The undersigned determines that the state agency assessments were properly accorded significant weight by the ALJ in this matter.

On January 7, 2010, plaintiff underwent a psychiatric evaluation performed by Susi Mulvihill, M.D. (Tr. 486-488). Plaintiff reported extreme difficulty with sleep and anxiety (Tr. 486).  Dr. Mulvihill indicated plaintiff's thought processes were essentially logical and goal directed and her insight and judgment were fair (Tr. 487).  Dr. Mulvihill diagnosed major depressive disorder and anxiety disorder, NOS, and gave plaintiff a GAF score of 45[6] (Tr. 487-488).

As correctly asserted by defendant, Dr. Mulvihill's report contains only recordings of Plaintiff's reported symptoms and the doctor's diagnosis of plaintiff's condition.  It did not contain opinions on the expected duration or functional effects of plaintiff's mental impairments.  (ECF No. 19 at 12 n. 4).  Dr. Mulvihill's report is of little value.

Based on the foregoing, the record does not support a more restrictive finding than Plaintiff being restricted to work at the light exertion level with the non-exertional limitations of performing 1 to 3 step tasks with only occasional public contact

---

[6]A GAF of 50-41 reflects:  "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

and only occasional contact with coworkers (Tr. 21).  Therefore, the undersigned finds that the ALJ's mental RFC determination is in accord with the weight of the record evidence and free of error.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence.  Accordingly,

**IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (**ECF No. 18**) is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment (**ECF No. 13**) is **DENIED.**

**IT IS SO ORDERED.**  The District Court Executive is directed to file this Order, provide copies to the parties, enter judgment in favor of Defendant, and **CLOSE** this file.

**DATED** this ___7th___ day of January, 2013

_____S/Fred Van Sickle_____
Fred Van Sickle
Senior United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 20